IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

DAVID J. MORSE,

        Plaintiff

    VS.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

        Defendant

NO. 5:08-CV-291 (CWH)

PROCEEDING UNDER 42 U.S.C. § 405(g)
BEFORE THE U.S. MAGISTRATE JUDGE

## **O R D E R**

Plaintiff DAVID J. MORSE filed an application for a period of disability and disability insurance benefits on June 3, 2004. The claim was denied initially and upon reconsideration. Plaintiff then requested a hearing (held on June 2, 2006) at which plaintiff appeared without counsel. Thereafter, the ALJ issued a hearing decision on October 30, 2006, finding that plaintiff was not disabled (Tr. 13-25). Plaintiff Morse sought review of the ALJ's decision by the Appeals Council, but the Appeals Council denied this request for review in an action dated July 25, 2008, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 4-6). Having exhausted all administrative remedies, plaintiff thereafter filed this action in U.S. District Court seeking review of the Commissioner's decision.

This case is now ripe for review under § 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c)(3). Both parties have consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to the ordering of the entry of judgment. The parties may appeal from this judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals. 28 U.S.C. § 636(c)(3).

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

In the case at bar, the ALJ concluded that plaintiff Morse had "severe" impairments of arthralgia of multiple joints and plantar calcaneus spurs. The ALJ found that plaintiff could no longer perform his past relevant work, but that he retained the residual functional capacity to perform a range of sedentary work that exists in significant numbers in the national economy and was therefore not disabled. The ALJ found that Plaintiff was limited as follows: he can lift and carry 20 pounds occasionally and less than 10 pounds frequently; he can stand and walk for 5 hours during an 8-hour workday and sit for 6 hours during an 8-hour workday; he can perform occasional climbing of ramps and stairs, but no climbing of ropes, ladders, or scaffolding; he can perform occasional balancing, stooping, crouching, kneeling, and crawling. He further found that the claimant can perform occasional overhead reaching, handling, finger [sic], and feeling with both upper extremities, but has limited use of both his upper and lower extremities for pushing/pulling. The claimant should avoid work at height and working around hazardous machinery. (Tr. 21).

The medical evidence shows the following: from June of 1994 to May of 2004, Plaintiff was treated by Chandler McDavid, M.D. of the Sandersville Family Practice Center. (Tr. 213-19.) Dr. McDavid diagnosed gout in 1997 and started Plaintiff on Indocin. At that time, he also referred Plaintiff to an orthopedic surgeon for a cystic lesion in the popliteal space of Plaintiff's right knee. (Tr. 217.) In January, 1998, Plaintiff advised Dr. McDavid that another doctor had treated him with Colchicine and Zyloprim for an acute gout outbreak. (Tr. 216.)

In 2000, Dr. McDavid referred Plaintiff for EMG testing that showed bilateral carpal tunnel syndrome, Grade II on the right and Grade III on the left. Dr. McDavid then referred Plaintiff to a surgeon for consideration of carpal tunnel release surgery. (Tr. 215.) By April of 2001, Dr. McDavid had Plaintiff on Allopurinol, 100 mg daily, for gout. Dr. McDavid continued Allopurinol at the same dosage in 2002 and 2003. (Tr. 214.)

In April of 2004, Plaintiff Morse sought treatment at the Veterans Administration Medical Center for pain in his hips that radiated down both legs, as well as for pain in his left thumb, right elbow, left knee, and both shoulders. (Tr. 207.) He had experienced pain in his elbows and knees for many years, "but recently has been getting worse." (Tr. 205.) Pain interfered with Plaintiff's enjoyment of life, physical activity, sleep, and work. (Tr. 208.) A depression screen was positive. (Tr. 210.) Abul Hasan, M.D. made changes to Plaintiff's medication regimen and ordered lab tests. (Tr. 206.)

Later in April of 2004, Plaintiff advised Dr. McDavid he was being treated at the Veterans Administration for gout and had to close his heating and air business because he was no longer physically able to do the work. Plaintiff's rheumatoid factor was normal. (Tr. 213, 219.) He asked Dr. McDavid to write him a letter explaining this to the Department of Labor, "so he can be retrained for a new position." Dr. McDavid noted: "I have asked him to please obtain his X-ray reports, labs & clinic notes from the VA & I would be glad to review these & give him a letter supporting his claims that he is no longer to perform his regular duties & would qualify for retraining in another profession." (Tr. 213.) By May 2004, Dr. McDavid still had not received the VA records, and did not see evidence of severe arthritis on his own x-rays or exam. He therefore advised Plaintiff that he could not write the letter. (Tr. 213.) Dr. McDavid did, however, state that he would try to help Plaintiff obtain treatment from the rheumatology clinic at the Medical College of Georgia. (Tr. 213.)

Plaintiff returned to Dr. Hasan at the VA later in May of 2004 with complaints of pain in both heels, radiating to his legs, and "multiple joint pains." X-rays of his elbow and hand showed "mild degenerative changes," but no other significant abnormalities. Dr. Hasan made another change to Plaintiff's medications and referred him for a podiatry consultation. (Tr. 199-201, 190-91.) After x-rays of both feet showed "infracalcaneal heel spur" bilaterally, the podiatrist in June, 2004 prescribed heel cups for Plaintiff to wear in his shoes "at all times." If these did not alleviate Plaintiff's symptoms, the podiatrist planned to inject his heels with cortisone. (Tr. 196-97, 189.)

Plaintiff Morse saw Dr. Hasan again in July of 2004 with pain in his heels, wrist, and both elbows. Dr. Hasan noted Plaintiff's x-rays and lab results did *not* match his complaints. Dr. Hasan continued Plaintiff's pain medication and referred him to Physical Medicine and Rehabilitation Services ("PM&RS") for evaluation of his elbow and wrist pain. (Tr. 173-74.)

Plaintiff saw Arepally V. Rao, M.D., the chief of Physical Medicine and Rehabilitation Services at the Veterans Administration Medical Center, in August of 2004. Dr. Rao noted early degenerative changes on X-rays of both hands and both elbows. On exam, Plaintiff had "mild thickening of synovial joints of both thumbs and also both PIP and DIP joints of the hands," swelling of both elbows, and limitation of range of motion. Dr. Rao diagnosed osteoarthritis and wanted Plaintiff to attend physical therapy; however, he recorded that Plaintiff lived too far away and "also works continuously." Dr. Rao advised Plaintiff "to conserve the joints by limiting his use of the hands excessively." (Tr. 171-72.)

In July of 2004, a non-examining state agency doctor reviewed Plaintiff's file and opined that he was generally capable of medium work with some non-exertional limitations. (Tr. 244-45.) In August of 2004, another non-examining state agency doctor agreed. (Tr. 241-42.) In October of 2004, a third nonexamining state agency doctor agreed with the first two. (Tr. 234-35.)

In September of 2004, Plaintiff Morse called the VA complaining of pain in his right knee that had lasted several days. He was apparently given a phone consultation. (Tr. 170.) In March of 2005 the Veterans Administration found Plaintiff "permanently and totally disabled" based on:

> disabilities, to include gouty arthritis, status postoperative bilateral carpal tunnels syndrome, hypertension, right knee degenerative joint disease, bilateral wrist degenerative joint disease, bilateral heel spurs, and bilateral elbow degenerative joint disease, which prevent you from working.

(Tr. 148-49.)

Dr. Jeffrey A. Fried, a consultative examiner, examined Plaintiff in September of 2006 (Tr. 251A-H). He observed that Plaintiff had a mild antalgic gait, could not push or pull with his feet, had 4-5 strength in his upper and lower extremities bilaterally; he did not detect any significant effusions in Plaintiff's knees or elbows and found that Plaintiff had joint arthralgia in multiple joints (Tr. 251A). Dr. Fried also opined on Plaintiff's work-related limitations that Plaintiff could occasionally lift twenty pounds, frequently lift less than ten pounds, stand or walk for five hours in an eight-hour day, and sit for six hours in an eight-hour day (Tr. 251F-G). He also limited Plaintiff to occasionally climbing, balancing, stooping, crouching, kneeling, crawling, reaching overhead, handling, fingering, and feeling (Tr. 251G).

*Medical-Vocational Guidelines ("Grids")*

Plaintiff Morse asserts that the ALJ applied the wrong medical-vocational guideline ("grid") rule to the ALJ's factual findings. The ALJ issued the unfavorable decision on October 30, 2006, approximately two weeks before Plaintiff's 50th birthday. The ALJ used the Medical-Vocational Guidelines (the grids) as a framework and determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform (Tr. 22, Finding No. 10).

The regulations state that the age categories should not be applied mechanically in borderline situations. See 20 C.F.R. § 404.1563(b). When a claimant is close to an older age category, he has a burden of offering credible evidence that his ability to adapt was less than the level established under the grids for a person of his age capable of his RFC. See *Hutchison v. Bowen*, 787 F.2d 1461, 1465 (11th Cir. 1986). The "fact that the age categories are not to be applied mechanically, however, obviously does not mean that a claimant must move mechanically to the next age category whenever his chronological age is close to that category." *Crady v. Secretary of Health & Human Servs.*, 835 F.2d 617, 622 (6th Cir. 1987).

By the time the ALJ's decision was before the Appeals Council for review, Plaintiff Morse had reached and surpassed his fiftieth birthday (Tr. 4, 54). Plaintiff claims that the Appeals Council should have then found him disabled as of his fiftieth birthday (Pl.'s Br. at 7-8). However, the ALJ's decision is the final decision of the Commissioner once the Appeals Council denies a request for review. See 42 U.S.C. § 405(g). New information, evidence, or events collected or occurring after the date of the ALJ's decision is only considered by the Appeals Council if it relates to the period on or before the ALJ's decision. See 20 C.F.R. § 404.976(b). Being a year older was a change in circumstance that occurred after the ALJ's decision and did not relate back to the period on or before the ALJ's decision and therefore the Appeals Council did not have to consider it. See 20 C.F.R. § 404.976(b).

Plaintiff further argues that since this was a "borderline age" issue, it was incumbent upon the ALJ to discuss whether or not to use his chronological age or to use the higher age category. The Program Operations Manual System (POMS) DI 25015.005 which deals with Age as a Vocational Factor, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015005!opendocument (May 19, 2009) is a compilation of SSA administrative interpretations. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). It states:

> Anytime a borderline age situation exists, the adjudicator must state whether it was determined to use the next higher age category or to use the individual's chronological age and explain why. The specific factors supporting either determination must be explained.

Such an interpretation by an administrative agency of its own regulations is "controlling unless it is plainly erroneous or inconsistent with the language and purposes of the regulation." *Scott v. Bowen*, 808 F.2d 1428, 1431 (11th Cir. 1987)(punctuation and citation omitted).

However, as pointed out by the Commissioner, it was Plaintiff's burden to offer credible evidence that his ability to adapt was less than the level established by the grids for a person of his age capable of his RFC. *Hutchinson, supra*. The ALJ determined that the additional limitations did not reduce the range of unskilled sedentary jobs and did not impact Plaintiff's ability to adapt to other jobs.

While it would have made for a cleaner record for the ALJ to specifically discuss why he believed Plaintiff should not be moved into an older category, remanding to correct that error, when it is clear that the outcome would not change, serves no useful purpose. *See Patterson v. Bowen,* 799 F.2d 1455, 1459 (11th Cir.1986) (stating remand is inappropriate when the error is harmless and that an error is harmless when correcting it would not change the outcome of the ALJ's finding).

*Vocational Expert*

Plaintiff Morse contends that the ALJ should have obtained the testimony of a vocational expert as he had significant non-exertional limitations. The grids may be used in lieu of VE testimony if none of the claimant's nonexertional impairments are so severe as to prevent a full range of employment at the designated level. *See Passopulos* v. Sullivan, 976 F.2d 642, 648. (11th Cir. 2006). However,

> postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolding, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.

SSR 96-9p, 1996 WL374185. The ALJ properly found that these additional limitations had "little or no effect on the occupational base of unskilled sedentary work" (Tr. 22). So it was appropriate that the ALJ used the grid table that corresponded to Plaintiff's RFC for sedentary work and found that Rule 201.21 provided a framework for finding that Plaintiff was not disabled (Tr. 22). See 20 C.F.R. pt. 404, subpt. P. app. 2, table no. 2 § 201.21.

*Combination of Impairments*

Plaintiff asserts that the ALJ and the Appeals Council failed to evaluate his gout, singly or in combination with other impairments, and its impact on his ability to perform work. He also contends that the ALJ failed to consider the side effects of his medications.

The Commissioner argues that by including arthralgia as a severe impairment and evaluating Plaintiff's RFC considering his claimed joint pain, the ALJ effectively included whatever type of arthritis Plaintiff may have had. Gout is a type of arthritis that causes intense joint pain, usually affecting the joints in the big toe, but also feet, ankles, knees, hands, and wrists. *See* Mayo Clinic, Gout http://www.mayoclinic.com/health/gout/ds00090. The specific name of the arthritis is not critical to the finding of a severe impairment or the RFC, because it is the functional or work-related limitations resulting from an impairment or a condition that matter in the RFC evaluation— not the diagnosis itself. See *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

At the hearing, Plaintiff Morse testified that his medication left him with a "drugged" feeling (Tr. 295-296). However, a review of the medical records reveals that Plaintiff did not complain of medication side effects to his doctors, and the doctors did not express concern over medication side effects (Tr. 144-231, 251-286). After evaluating Plaintiff, Dr. Rao suggested that if Plaintiff was not going to attend physical therapy, then he should continue with the pain medication given by his primary care physician; no comment was made regarding side effects of this medication (Tr. 167). While Plaintiff did indicate on his disability report forms completed for his disability application that his medication made his stomach hurt, made him sweat more and generally feel funny (Tr. 71, 75, 93), he has not cited to medical records showing limiting effects of the medication. See *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (ALJ did not err in treatment of side effects when he noted the record did not disclose any concern of side effects by the several doctors).

*VA Disability Finding*

Plaintiff also alleges that the ALJ failed to consider the disability finding from the Veteran's Administration. Social Security regulations provide that a decision by any other governmental agency regarding disability "is based on its rules and is not our decision about whether you are disabled . . . a determination made by another agency that you are disabled or blind is not binding on us." 20 C.F.R. § 404.1504.

9

At the hearing, the ALJ acknowledged that Plaintiff Morse received disability benefits from the VA (Tr. 293) and discussed in his decision several medical records from the VA. (Tr. 19-20). However, because there was a large gap in the treatment records, where the Plaintiff apparently did not receive *any* medical care during most of 2005 and 2006, Plaintiff was referred for a consulting examination with Dr. Fried in September of 2006. (Tr. 20).

There was no requirement that the ALJ concur with the findings of the VA regarding Plaintiff's disability where the ALJ independently considered the entire medical record before him, including records that came into existence *after* the VA's determination. The undersigned finds that the decision was based upon substantial evidence.

*New Evidence*

Plaintiff avers that the Appeals Council committed error in denying his request for review based upon a new diagnosis of fibromyalgia and the opinions of Dr. Rao, a consultative examiner. The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's "actions, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram v. Commissioner of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007) (quoting 20 C.F.R. § 404.970(b)).

In this case, the Appeals Council reviewed the additional evidence and found that it did not provide a basis for changing the ALJ's decision (Tr. 4-5). The diagnosis of fibromyalgia occurred almost a year after the ALJ issued his decision. (Tr. 271-272). Further, the diagnosis of fibromyalgia was not sufficient to change the ALJ's RFC determination without evidence of functional or work-related limitations beyond those caused by the severe impairments already found by the ALJ, including arthralgia of multiple joints and plantar calcaneus spurs (Tr. 19). *See Moore*, 405 F.3d at 1213 n.6 ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). Additionally, the new diagnosis may indicate a worsening of Plaintiff's physical condition, but the diagnosis in and of itself does not show increased limitations that date back to the relevant period.

10

The 2005 opinion of Dr. Rao is not new evidence as it was before the ALJ (Tr. 144). The undersigned finds that Dr. Rao's opinion was cumulative of evidence that the Appeals Council considered when it reviewed the entire record before denying Plaintiff's request for review, *see* 20 C.F.R. § 404.970(b), and failing to specifically consider it was not error.

Accordingly, for the reasons hereinabove stated, IT IS ORDERED AND DIRECTED that decision of the Commissioner be, and it is, **AFFIRMED** pursuant to Sentence Four of § 405 (g).

SO ORDERED AND DIRECTED, this 29th day of MARCH, 2010.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE

msd